UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FLOYD E. KOHN,

                Plaintiff,                Case No. 2:16-cv-115

v.                                        HON. GORDON J. QUIST

UNKNOWN SELLICK, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Floyd E. Kohn pursuant to 42 U.S.C. § 1983. Defendants Christine Sellick, Eric Gurnoe, Jack Payment, Joseph Russo, Karolyn Holden, Jason Thomas, Brett Watson, Timothy Ross, Robert Pawley, Crystal Bigger, Kenneth Dunton, Bradley Hall, Louis Miron, and Jeffrey Lancour filed a motion for summary judgment (ECF No. 35) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 38).

Plaintiff alleges that Defendant Miron paid Plaintiff's cellmate Simms to attack Plaintiff. Defendant Lancor allegedly failed to move Plaintiff out of his cell after Plaintiff informed him that inmate Simms was hostile toward Plaintiff. Plaintiff alleges that Defendants Sellick and Payment knowingly assigned him to a cell with inmate Shelton who had assaulted him previously. Plaintiff alleges that Defendants Watson and Dunton attempted to force Plaintiff to share a cell with inmate Shelton.

Plaintiff alleges that Defendants Ross, Bigger, Russo, and Pawley conspired to retaliate against Plaintiff by writing false misconduct tickets after Plaintiff wrote grievances on Defendant Ross. Plaintiff alleges that Defendant Sellick referred to him as a "fuckin' transgender"

and wrote a misconduct ticket on Plaintiff for having his top two shirt buttons undone. Plaintiff alleges that Defendant Hall denied him an opportunity to eat a meal after calling Plaintiff a "fag ass nigger" and telling Plaintiff to go kill himself. Plaintiff stated that Defendants Holden and Thomas placed him in segregation because Plaintiff is homosexual.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th

2

Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by

4

>intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants have attached a MDOC Step III Grievance Report showing the Step III grievance appeals that Plaintiff submitted. (ECF No. 36-3, PageID.584-596). Two of the grievances listed in that report, which were filed by Plaintiff while he was housed at LMF, relate to the claims asserted in this case. Two the grievances listed in that report, which were filed by Plaintiff while housed at the Chippewa Correctional Facility (URF), relate to the claims asserted in this case.

Defendant Lancour concedes that grievance LMF 14-05-899-17i exhausted the claim that Defendant Lancour housed Plaintiff with prisoner Sims knowing the risk of assault to Plaintiff (ECF No. 36-8, PageID.775-778). Defendants argue that none of Plaintiff's other grievances filed at LMF were properly exhausted or involve the remaining allegations in the complaint.

The other relevant grievance is LMF 14-08-1415-28j, which Plaintiff pursued through Step III (ECF No. 36-8, PageID.750-754). In that grievance Plaintiff alleged that Defendant Myron paid prisoner Simms to attack Plaintiff. The grievance was rejected as being duplicative of a prior grievance (PageID.755). The Step II response stated in part:

> It is noted that your grievance was rejected at Step I because it considered to be another grievance on an issue you have already grieved and have not followed through on. Inspector Rutter completed the appropriate investigation on the allegations you made against Sgt. Miron and forwarded it on to the appropriate individuals. This grievance was properly rejected by the Grievance Coordinator at Step I.

(PageID.753). The Step III response stated: "The response you received at Steps I & II reflect that your issue was in fact considered and appropriately investigated." (PageID.751).

In the opinion of the undersigned, Plaintiff's failure to appeal his original Step I grievance establishes that Plaintiff failed to properly exhaust this grievance by following the MDOC grievance procedures requiring him to appeal though Step III instead of refiling a new Step I grievance on the issue. The Sixth Circuit's opinion in *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) is instructive. The Court decided:

> Here, the grievance was rejected under the procedural rule on timely filing at the first step, improperly rejected under another procedural rule at the second step, and rejected on the merits at the third step. We determine whether this constitutes proper exhaustion by reference to habeas doctrine. *See id.* at 325. *Reed–Bey* states that in habeas cases, " 'a procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." *Id.* (quoting *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Here, the Step III response (the equivalent of the last state court in habeas) did not "clearly and expressly" state that Reynolds–Bey's fifth grievance was being rejected on procedural grounds. Rather, it mentioned the procedural bases for the Step I and II decisions and then rested its determination on the substantive ground that "[d]ismissals/not guilty findings in

7

> major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff." (R. 32–4 at 6.) Therefore, we find that Grievance OTF 05–03–00153–28E was exhausted for purposes of the PLRA.

*Id*. at 502.

In this case, the Step III response clearly states that Plaintiff's grievance was rejected due to his failure to comply with the procedural rule that he had already filed a grievance on the issue presented, but failed to follow through with that grievance through Step III. In the opinion of the undersigned, *Reynolds-Bey v. Harris* makes it clear that where a Step III response rejects a grievance for failing to follow MDOC grievance procedure, the grievance cannot be considered properly exhausted under the policy.

In grievance URF 15-05-1279-28c plaintiff asserted that Defendant Sellick harassed him by writing a false misconduct ticket for failing to close the top buttons on his shirt (ECF No. 36-4, PageID623-627). However that grievance was rejected at each Step of the grievance process for raising multiple issues. In the opinion of the undersigned, Plaintiff failed to properly exhaust his claim that Defendant Sellick violated his equal protection rights by issuing a misconduct ticket for keeping his top shirt buttons undone.

Plaintiff submitted grievance URF 14-11-3575-17c, asserting that Defendant Hall harassed him by making homophobic comments and instructing Plaintiff to kill himself. Plaintiff asserts that Defendant Hall prevented him from eating a meal (ECF No. 36-4, PageID682-687). Defendant Hall concedes that Plaintiff exhausted this grievance and that the facts are the same as those asserted in the complaint regarding Plaintiff's equal protection violation. Defendant Hall argues that the date on the grievance does not match the date of the complained of conduct as presented in the complaint. However, liberally construing Plaintiff's complaint, it is recommended that the Court find that Plaintiff exhausted his equal protection claim against Defendant Hall.

Plaintiff has not specifically argued that he had submitted a grievance on each of the issues presented in this case. Instead, Plaintiff makes the general argument that he has submitted several hundred grievances and on multiple occasions grieved the conduct presented in this case against the Defendants. Plaintiff has asserted he never received a response to some of his grievances. Plaintiff directs the Court to the nearly 400 hundred pages of attachments to his complaint without providing any specific reference to a relevant grievance submission.[2] In reviewing the numerous exhibits to Plaintiff's complaint, it does appear that Plaintiff submitted multiple grievances that include allegations against the Defendants. However, because the MDOC Step III Grievance Report relied upon by Defendants lists all grievances appealed to Step III, Plaintiff's exhibits do not show the existence of a genuine issue of material fact.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 35) be granted dismissing Defendants Sellick, Gurnoe, Payment, Russo, Holden, Thomas, Watson, Ross, Pawley, Bigger, Dunton, and Myron without prejudice. It is recommended that the motion be denied as to Defendants Lancor (Eighth Amendment failure to protect claim) and Hall (Equal Protection claim).

Dated:   November 30, 2017              /s/ Timothy P. Greeley            .
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[2] Many of the documents presented by Plaintiff, including copies of grievances, are illegible.

9