UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FLOYD E. KOHN #393687,

        Plaintiff,

v.                                      Case No.   2:16-cv-115
                                      HON.   GORDON J. QUIST

UNKNOWN ERNST, et al.,

        Defendants.
_____/

REPORT AND RECOMMENDATION

        Plaintiff Floyd E. Kohn filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several defendants. The remaining Defendants, Chippewa Correctional Facility Corrections Officer Bradley Hall and Alger Correctional Facility Prison Counselor Jeffrey Lancour filed a motion for summary judgment. (ECF No. 50). Plaintiff has filed a response. (ECF No. 53).

        Plaintiff alleges that Defendant Lancor allegedly failed to move Plaintiff out of his cell after Plaintiff informed him that inmate Simms was hostile toward Plaintiff. On May 16, 2014, Plaintiff was involved in a fist fight with his cellmate while the two inmates were dining in the chow hall. Plaintiff and his cellmate had been laughing and talking with each other. Plaintiff told his cellmate to sit down and eat. After that statement a physical confrontation ensued between the two. Plaintiff alleges that Defendant Hall denied him an opportunity to eat a meal after calling Plaintiff a "fag ass nigger" and telling Plaintiff to go kill himself. Defendant Hall describes different circumstances. Defendant Hall explains that he issued Plaintiff a misconduct ticket when he observed Plaintiff "cut in line by -passing in excess of 10 prisoners." Plaintiff refused Defendant Hall's order

to go back to the end of the line. Plaintiff was found guilty of the misconduct ticket. (ECF No. 51-2, PageID.866).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Hall reasserts his argument that Plaintiff failed to exhaust his claim against Defendant Hall. In an earlier Report and Recommendation, I recommended that that Plaintiff should be given the benefit of the doubt regarding exhaustion of his claim against Defendant Hall, despite the dates of Plaintiff's grievance not matching the date of the alleged conduct in his complaint. I explained:

> Plaintiff submitted grievance URF 14-11-3575-17c, asserting that Defendant Hall harassed him by making homophobic comments and

> instructing Plaintiff to kill himself. Plaintiff asserts that Defendant Hall prevented him from eating a meal (ECF No. 36-4, PageID682-687). Defendant Hall concedes that Plaintiff exhausted this grievance and that the facts are the same as those asserted in the complaint regarding Plaintiff's equal protection violation. Defendant Hall argues that the date on the grievance does not match the date of the complained of conduct as presented in the complaint. However, liberally construing Plaintiff's complaint, it is recommended that the Court find that Plaintiff exhausted his equal protection claim against Defendant Hall.

(ECF No. 40. PageID.815).  In that grievance, Plaintiff complained that Defendant Hall verbally harassed and abused him, preventing him from eating his meal during lunch time.  In his grievance, Plaintiff stated that this event occurred on November 11, 2014.  Plaintiff's complaint alleged that Defendant denied him a meal and had harassed him in February of 2015.  (ECF No. 1, PageID.19).  Plaintiff stated in his complaint that during an incident which occurred in February of 2015, Defendant Hall told him to leave the chow hall for "cutting" and made derogatory comments.  *Id*. Plaintiff never filed a grievance on the February of 2015 incident.

The Court accepted the recommendation to liberally construe Plaintiff's complaint and find that the November 11, 2014 event that Plaintiff did grieve was sufficient to exhaust the conduct asserted in the complaint, which allegedly occurred in February of 2015.  Defendant then deposed Plaintiff. (ECF No. 36-4, PageID.683-686).  During Plaintiff's deposition, he stated that he understood the discrepancies in the dates between the November 11, 2014 incident that he clearly exhausted in his grievance, and the February of 2015 incident alleged in his complaint.  (ECF No. 51-3, PageID.871-872).  Plaintiff reaffirmed during his deposition that the incident alleged in the complaint occurred during February of 2015. *Id*.  Plaintiff explained that he filed multiple grievances against Defendant Hall, so he must have exhausted this claim. Further, in Plaintiff's response brief he states that he had a "full conversation" with Defendant Hall about the incident and questions "How many people do I have to talk to?"  (ECF No. 53, PageID.53).  Plaintiff simply asserts that both Defendants should be fired from their positions with the MDOC.  (PageID.896).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance

forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

Based upon the statements that Plaintiff made during his deposition, it is now clear that his claim against Defendant Hall occurred in February of 2015. Plaintiff asserts that the date in the complaint is the correct date of Defendant Hall's conduct. Plaintiff's grievance against Defendant Hall was filed on November 11, 2014. (PageID.686). That grievance could not have exhausted the allegations in Plaintiff's complaint that occurred in February of 2015. Plaintiff has asserts that he spoke with Defendant Hall about the alleged event. Speaking with Defendant Hall does not satisfy Plaintiff's obligation to exhaust his administrative grievance remedies. In the opinion of the undersigned, it is now clear that Plaintiff failed to properly exhaust his February of 2015 claim against Defendant Hall. Accordingly, it is recommended that Defendant Hall be dismissed without prejudice.

Plaintiff alleges that Defendant Lancour failed to protect him from an inmate assault. Defendant Lancour argues that he did not violate Plaintiff's Eighth Amendment rights by knowingly disregarding a risk of harm to Plaintiff. Under the Eighth Amendment, a prison official has a duty to

protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.* In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'-- exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety, because he heard rumors regarding a planned attack. Plaintiff was subsequently assaulted. The court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff and upheld the district court's finding that the assault was a single, isolated incident. The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim.

Plaintiff and his cellmate were both transgender/homosexual. Plaintiff spoke with Defendant Lancour to request a heterosexual cellmate. Defendant Lancour states that Plaintiff never indicated that his cellmate was a threat or that he had an issue with his cellmate. (ECF No. 51-4, PageID.875-876). Defendant Lancour indicates that if Plaintiff told him that he feared his cellmate or that he needed protection, Lancour would have immediately transferred Plaintiff to segregation until an investigation could be completed. *Id.* Plaintiff and his cellmate housed together between March 10, 2014, and May 16, 2014. On May 16, 2014, Plaintiff and his cellmate got into a physical confrontation in chow hall. Both Plaintiff and his cellmate were found guilty of fighting. The hearing officer rejected Plaintiff's claim that he was not the aggressor. Contrary to Plaintiff's claim that he just tried to block his cellmate's punches, the hearing officer found that Plaintiff was involved in a mutual confrontation and exchanged blows with his cellmate. (ECF No. 51-4, PageID.879). The hearing officer further determined:

> Prisoner failed to establish that he was acting in self-defense. First, no one supported his claims that he simply covered to protect himself. Prisoner asked for two witnesses. The first witness claimed that Kohn and Simms were horseplaying. The other claimed he saw nothing, despite being given a leading question telling him what exactly to say. Second, the prisoner claimed that he has asked to be moved because of the problems with Simms and asked Lancour for a statement to that effect. Lancour flatly rejected Kohn's claims and, in fact, stated that Kohn told him repeatedly that he liked Simms and everything was going well. Third, it also did nothing for the prisoner's credibility that he exaggerated the extent of his injuries in his written statement by claiming multiple injuries but he had told the nurse at the time of the incident that he was "fine" and only had a superficial scratch by his nose. Reporting staff member factual and is credible as to what occurred. The prisoner was not. It is not believed that the officer, for some unknown reason, conspired with Johnston and fabricated a misconduct report - against a prisoner that was nothing but a victim of an assault. They are believed that the prisoner was exchanging punches with Simms. Since they are believed that the prisoner was exchanging punches, the prisoner failed to establish self- defense as the force used was excessive. In addition, prisoner knew that there were problems between him and Simms but the prisoner did not notify staff members of that problem. Instead, he sat at the same table and then told Simms to sit down and eat, which is provocation. Charge upheld.

(ECF No. 51-4, PageID.879).

In the opinion of the undersigned, the factual record does not support a claim that Defendant Lancour failed to protect Plaintiff from harm in violation of the Eighth Amendment. The record establishes that although Plaintiff had requested another cellmate, his request was not based upon a fear of his safety. The record shows that the fight between Plaintiff and his cellmate began after Plaintiff had told his cellmate to sit down and eat. Plaintiff and his cellmate exchanged blows and were both responsible for the fight that occurred. Plaintiff has failed to support his claim that he had informed Defendant Lancour that his cellmate was a threat. In fact, there exists nothing in the record that could support the claim that Plaintiff had communicated to any officer that he was in fear of his cellmate at any time prior to the May 16, 2014, incident. In the opinion of the undersigned, it is recommended that the Court dismiss Defendant Lancour.

Finally, to the extent that Plaintiff is alleging that Defendants acted in their in official capacities, Plaintiff's official capacity claims fail as a matter of law. *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state and are not claims against a "person" subject to Section 1983 liability). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will, 491 U.S. 58; Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections). The State of Michigan has not consented to civil rights suits in the federal courts. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars plaintiff's official-capacity suits against MDOC employees. Accordingly, plaintiff's official capacity claims against the individually-named defendants should be dismissed.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendant's Motion Summary Judgment (ECF No. 50) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).   If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:    December 11, 2018

- 11 -